IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES CHRISTOPHER JOHNSON, individually and as the representative of a class of similarly-situated persons, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) No. |
| v. | )<br>) |
| UBER TECHNOLOGIES, INC., | )<br>) |
| Defendant. | ) |

## CLASS ACTION COMPLAINT

Plaintiff, Charles Christopher Johnson ("Plaintiff"), brings this action on behalf of himself and all others similarly-situated, against Uber Technologies, Inc. ("Uber" or "Defendant"), to stop it from sending unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"),[1] and to recover statutory damages and other relief for all persons who received such text messages. Plaintiff's allegations are based on information and belief and the investigation of counsel, except those pertaining to Plaintiff's own actions, which are based on personal knowledge.

## INTRODUCTION

1. This case challenges Uber's practice of unlawfully sending autodialed telemarketing calls, including text messages, to wireless/cellular telephones ("wireless phones") without prior express written consent as required by the TCPA.

---

[1] The TCPA is codified at section 227 of the Communications Act of 1934, as amended.

To get such consent, telemarketers <u>must</u> tell consumers the telemarketing will be done with auto dialer equipment and that consent to receive telemarketing is not a condition of purchase. 47 C.F.R. § 64.1200 (a) (2), (f) (8) (i).

2. Here, Uber transmitted unauthorized telemarketing in the form of "text messages" to cell phones including or introducing an advertisement for the purpose of encouraging the purchase of goods or services. 47 C.F.R. § 64.1200 (a).

3. Uber did not have Plaintiff's prior express written consent to send autodialed text messages to his wireless phone.

4. The TCPA grants consumers a private right of action, with provision for $500 or the actual monetary loss in damages for each violation, whichever is greater, and the Court may increase those damages up to three times when it determines a violation was knowing or willful. 47 U.S.C § 227 (b) (3). On behalf of herself and all others similarly-situated, Plaintiff seeks statutory damages for each violation of the TCPA by Uber, and requests that the Court treble those damages.

5. On behalf of the Class, Plaintiff also seeks an injunction requiring Uber to cease all unlawful text messages, together with costs and reasonable attorneys' fees as appropriate.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA, a federal statute.

7. The Court has personal jurisdiction over Uber because it conducts business within the State of Illinois.

8. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391 because Defendants committed a statutory tort within this District and a significant portion of the events giving rise to Plaintiff's claims took place here.

## PARTIES

9. Plaintiff is an individual who resides in Cook County, IL, within the Northern District of Illinois.

10. Uber Technologies, Inc. is a Delaware corporation with its principal place of business in San Francisco, California.

11. Uber operates a transportation booking application (computer program or "app") that "connect[s] people who need a reliable ride with people looking to earn money driving their car." https://www.uber.com/our-story/.

12. On December 3, 2015, Bloomberg News reported, "Uber Technologies is looking to raise as much as $2.1 billion in a financing round that would value the car-booking company at $62.5 billion."
http://www.bloomberg.com/news/articles/2015-12-03/uber-raises-funding-at-62-5-valuation [last visited on May 9, 2016].

FACTS

A. Background

13. This case challenges Uber's practice of sending autodialed[2] telemarketing calls,[3] including text messages, to wireless/cellular telephones ("wireless phones") without prior express written consent.[4]

14. To get such consent, telemarketers <u>must</u> tell consumers the telemarketing will be done with auto dialer equipment and that consent to receive telemarketing is not a condition of purchase.[5]

15. Short Message Service ("SMS"), more commonly known as "text messaging," is a popular means for communicating among cell phone subscribers.

16. The most common form of text messaging is person-to-person messaging. Text messages may also be sent by automated systems to facilitate the ordering of products and services from cell phones or for participating in contests or other marketing programs.

---

[2] The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity--(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C § 227 (a) (1).

[3] "Calls" includes text messages. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, para. 165 (2003) (the "*2003 TCPA Order*"). *See also* 47 U.S.C § 227 (b) (1) (A) (iii); 47 C.F.R. § 64.1200 (a) (1) (iii).

[4] *See, e.g., Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd. 1830, 1838, para. 20 (2012) (the "*2012 TCPA Order*"); 47 C.F.R. § 64.1200 (a).

[5] 47 C.F.R. § 64.1200 (a) (2), (f) (8) (i).

4

17. Businesses continually seek cost-effective ways to market their goods and services. The popularity of cell phones and text messaging has created a marketing opportunity for businesses but their telemarketing efforts are limited by restrictions on telephone, facsimile, and email solicitations.

18. Unlike conventional advertising, text message advertising requires the use of technology—cell phones—owned and paid for by the text message recipients.

19. According to the Federal Communications Commission ("FCC"), "Month after month, unwanted … texts, both telemarketing and informational, top the list of consumer complaints received by the Commission. The [TCPA] and [FCC] rules empower consumers to decide which … text messages they receive, with heightened protection to wireless consumers…."[6]

20. The FCC has explained, "Calling and texting consumers *en masse* has never been easier or less expensive" in part, because skyrocketing growth of mobile phones, rising from approximately 140 million wireless subscriber connections in 2002 to approximately 326 million in 2012.[7] Additionally, 39 percent of adults were wireless-only in the second half of 2013, compared to fewer than three percent of adults at the beginning of 2003."[8]

---

[6] *See* TCPA Omnibus Declaratory Ruling and Order, CG Docket No. 02-278, Declaratory Ruling and Order, 30 FCC Rcd. 7961, para. 1 (2015) ("2015 Omnibus Order").

[7] 2015 Omnibus Order, para. 7, n. 32.

[8] According to a 2012 study by the Pew Research Center, 69% of cell phone users who use text messaging receive unwanted text message spam, and "[o]f those texters, 25% face problems with spam/unwanted texts at least weekly." (Source:

21. "The intent of Congress, when it established the TCPA in 1991, was to protect consumers from the nuisance, invasion of privacy, cost, and inconvenience that autodialed [text messages] calls generate."[9] Congress found that banning such text messages, except when the texted party consents, "is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* Congress therefore put the responsibility for compliance with the law directly on the party that "makes" or "initiates" autodialed text messages. *Id.*

22. At issue here, Uber transmitted text messages to cell phone users—including Plaintiff and the other members of the putative class—to promote Uber's products and services.

23. Plaintiff is, and at all times mentioned herein was, the subscriber of his cellular telephone number ending in 0142 (the "0142 Number").

24. The 0142 Number is, and at all times mentioned herein was, assigned to a cellular telephone service as specified in 47 U.S.C. § 227 (b) (1) (A) (iii).

25. On or about April 13, 2016, Plaintiff received the following text message at the 0142 Number: "You're invited to drive Uber. No schedule. No boss. Sign up now and get a $500 bonus. Sign up Link >> http //tinyurl.com/tammyuber."

26. The following image is a screen shot of the SMS message at issue, received by Plaintiff at the 0142 Number on April 13, 2016:

---

http://www.pewinternet.org/2012/08/02/mobile-phone-problems (last visited: November 20, 2015.)) Plaintiffs often receive such unwanted text messages.

[9] 2015 Omnibus Order, para. 29, n. 102 (citing *See* S. REP. NO. 102-178, 1st Sess., 102nd Cong., (1991) at 2, 4–5).



27. The text message purportedly originated from a California telephone number, 818-818-4522.

28. On information and belief, the April 13 text message was sent by Uber or on Uber's behalf to recruit Plaintiff to become a driver for Uber's transportation app.

29. Plaintiff did not expressly consent to receive a commercial text message from Uber.

30. Plaintiff did <u>not</u> give Uber his prior express written consent to send telemarketing to his wireless phone.

31. Uber never clearly and conspicuously disclosed to Plaintiff that he had consented to receive automated text calls from Uber—because he never so consented—or that he was not required to consent to such calls in order to purchase goods or services from Uber.

32. Long ago, Plaintiff downloaded Uber's app to his wireless phone, but he deleted the app within a week or so and never used it. Plaintiff never accessed or used Uber's services.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this lawsuit as a class action on behalf of himself and all other similarly-situated persons (the "Class"). The Class is initially defined as follows: "All persons in the United States who received one or more text messages inviting them to sign up to drive for Uber." (Plaintiff does not yet know the extent or scope of Uber's text message advertising campaign and reserves the right to change the proposed class definition or to propose subclasses during this litigation.) Specifically excluded from the Class are the following persons: (a) Uber and its respective affiliates, employees, officers, directors, agents, independent contractors, and representatives and their immediate family members; and (b) the judges who preside over this litigation, including the members of their immediate families.

34. This action is brought and may properly be maintained as a class action pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, and adequacy requirements under Rule 23 (a). Additionally, prosecution of Plaintiff's claims separately from the Class's claims

would create a risk of inconsistent or varying adjudications under Rule 23 (b) (1) (A). Furthermore, the questions of law or fact that are common in this action predominate over any individual questions of law or fact making class representation the superior method to adjudicate this controversy under Rule 23 (b) (3).

35. **Numerosity/Impracticality of Joinder**: On information and belief, the Class is so numerous that joinder of all Class members is impracticable. The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Uber's records or the records of third parties. On information and belief, the Class includes hundreds or thousands of persons nationwide.

36. **Ascertainability:** The Class is defined by objective criteria, permitting Class members to be identified. On information and belief, the individual members of the Class may be identified from Uber's records or the records of third parties.

37. **Commonality and Predominance**: There is a well-defined community of interest among the Class members and common questions of law and fact predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary from one Class member to another and may be determined without reference to the individual circumstances of any Class member, include, but are not limited to the following:

    a.    Whether Uber violated the TCPA by sending unauthorized text messages to Plaintiff and the other members of the Class;

b. Whether the equipment Uber used to send the text messages in question was an automatic telephone dialing system as defined by the TCPA;

c. Whether Uber acquired the Class members' cell phone numbers in a written agreement, bearing the signature of the person called;

d. Whether the means by which Uber acquired the Class members' cell phone numbers clearly and conspicuously informed them that they may receive advertisements or telemarketing messages by means of an automatic telephone dialing system;

e. Whether the means by which Uber acquired the Class members' cell phone numbers clearly and conspicuously informed them that they were not required to sign or enter into the agreement as a condition of purchasing any property, goods, or services;

f. Whether Plaintiff and the other members of the Class are entitled to statutory damages under the TCPA;

g. Whether Uber's actions were knowing or willful and, if so, whether the Court should treble the statutory damages awarded to Plaintiff and the other members of the Class; and

h. Whether Plaintiff and members of the Class are entitled to equitable relief, including but not limited to injunctive relief.

38. **Typicality**: Plaintiff's claims are typical of the claims of the Class because Plaintiff and all Class members were injured by the same wrongful practices. Uber sent Plaintiff and the other Class members text messages without

their express written consent and without first providing the disclosures required by the TCPA. Because Uber's conduct is the focus of this case, if Plaintiff prevails on his claims, then the other Class members will prevail as well.

39. **Adequacy of Representation**: Plaintiff is an adequate representative of the Class because his interests do not conflict with those of the Class members he seeks to represent. Plaintiff has retained financially able attorneys who are competent and experienced in complex class action litigation and Plaintiff intends to vigorously prosecute this action. Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

40. **Superiority**: A class action is the superior method for the fair and efficient adjudication of this lawsuit because individual litigation of each Class members' claims would be economically infeasible and procedurally impracticable. The statutory damages owed to each Class member as a result of Uber's wrongful conduct are too small to warrant the expenses of individual suits. The likelihood of individual Class members prosecuting separate claims is remote and, even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individually, the Class members do not have a significant interest in controlling the prosecution of separate actions. Furthermore, individualized litigation would create the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. Plaintiff foresees no difficulty in the management of this action as a

11

class action. The Class members and their damages may be determined based upon information maintained by or available to Defendants.

## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *ET SEQ.*

41. Plaintiff incorporates the preceding paragraphs as though fully alleged herein.

42. The TCPA provides in pertinent part as follows:

(b) Restrictions on use of automated telephone equipment

(1) Prohibitions

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
>
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call ….

47 U.S.C. § 227 (b) (1) (A) (iii).

43. The FCC's regulations provide in pertinent part:

(a) No person or entity may:

> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a) (1) (i) through (iii) of this section, other than a call made with the prior express written consent of the called party.

12

47 C.F.R. § 64.1200.

44. Uber's text messages to Plaintiff and the other class members included or introduced an advertisement or constituted telemarketing.

45. The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of ... goods, or services, which is transmitted to any person." 47 U.S.C. § 227 (a) (4).

46. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227 (a) (1).

47. Before sending a text message, the sender must obtain "prior express consent" from the called party. "Prior express consent" must:

- Be in the form of an agreement in writing, bearing the written or electronic signature of the person providing consent;

- Specify the telephone number to which the person is consenting to be called;

- Clearly and conspicuously authorize the company to call the person using an auto-dialer system or prerecorded message for telemarketing purposes; and

- Clearly and conspicuously disclose that consent is not a condition of purchasing goods or services.

47 C.F.R. § 64.1200 (f) (8).

13

48. At issue here, Uber made telephone solicitations, including but not limited to the text messages recited above, to the cell phone numbers of Plaintiff and other members of the Class. Plaintiff's allegations are not limited to text messages he received, as he does not yet know the scope and extent of Uber's text message advertising campaign.

49. Uber sent unsolicited commercial text calls to Plaintiff and the other members of the Class using an automated telephone dialing system.

50. Uber sent these text calls without first obtaining the called parties' prior express, written consent.

51. Uber knew or should have known it lacked prior express, written consent to send these text calls.

52. Uber sent these text calls without first clearly and conspicuously disclosing that the called parties were providing or would provide consent to receive calls using an automatic telephone dialing system or an artificial prerecorded voice and that such consent was not required to purchase Uber's property, goods, or services.

53. Uber violated the TCPA by sending text calls to Plaintiff and the other Class members without first obtaining their prior, written consent.

54. Uber violated the TCPA by not providing the required clear and conspicuous disclosures to Plaintiff and the other Class members.

55. Uber harmed consumers by sending these text messages, not only because consumers were subjected to the aggravation that accompanies unsolicited

wireless/cellular spam, but also because many consumers pay to receive text messages.

56. The text messages sent to Plaintiff and the Class members were sent using equipment that had the capacity to store telephone numbers retrieved from Uber's database and to dial such numbers. The equipment can also be programmed to generate and dial random or sequential numbers. By using such equipment, Uber was able to send text messages simultaneously to thousands of cell phone numbers *en masse* without human intervention.

57. Uber's text calls were made through the use of a short code dialing service and without the prior express written consent of Plaintiff and the Class members and without first providing the required disclosures.

58. Uber's conduct in sending such text messages violates 47 U.S.C. § 227 (b) (1) (A) (iii).

59. Uber's conduct in sending these text messages was a knowing and willful violation of 47 U.S.C. § 227.

60. As a result of Uber's violation, the members of the Class suffered actual damages by, *inter alia*, having to pay their respective cellular/wireless carriers for the text messages where applicable and, under 47 U.S.C. § 227 (b) (3) (B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA, and up to $1,500.00 for each if the Court determines that Uber's violations of the TCPA were knowing or willful.

61. The Court should enjoin Uber from sending future text messages without the written consent of the called party.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly-situated, demands judgment in favor of the Class and against Defendants as follows:

a. That the Court find that this case may be maintained as a class action, appoint Plaintiff as the class representative, and appoint Plaintiff's counsel as counsel for the class;

b. That the unlawful conduct alleged herein be declared to be illegal and in violation of the TCPA;

c. That the Court award $500.00 in statutory damages for each violation of the TCPA;

d. That the Court treble the statutory damages if it concludes that Uber's violations were willful or knowing;

e. That the Court enter an injunction prohibiting Uber from engaging in the same or similar practices alleged herein;

f. That the Court enter judgment against Uber and in favor of Plaintiff and members of the Class;

g. That Plaintiff and members of the Class recover their costs of the suit, and attorneys' fees as allowed by law; and

h. That the Court award all other relief allowed by law or equity.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

        Respectfully submitted,

        CHARLES CHRISTOPHER JOHNSON,
        individually and as the representative of a
        class of similarly-situated persons,

        By: /s/ Phillip A. Bock

        Phillip A. Bock
        Tod A. Lewis
        James M. Smith
        Bock, Hatch, Lewis & Oppenheim, LLC
        134 N. La Salle St,, Ste. 1000
        Chicago, IL  60602
        Telephone: 312-658-5500
        Fax: 312-658-555 5