IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHARLES CHRISTOPHER JOHNSON, individually and as the representative of a class of similarly situated persons, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) 16 C 5468 |
| UBER TECHNOLOGIES, INC., | )<br>) Judge John Z. Lee |
| Defendant. | )<br>) |

### ORDER

Plaintiff Charles Johnson, individually and on behalf of similarly situated persons, has sued Uber Technologies, Inc. for sending unsolicited text messages in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227. Uber has moved to compel Plaintiff to arbitrate his claims pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3–4. Plaintiff denies that he formed an agreement to arbitrate with Uber. For the following reasons, Uber's motion [15] is denied.

### STATEMENT

The following facts are undisputed. On July 8, 2013, Plaintiff downloaded Uber's rider application to his phone with an Android operating system. Johnson Decl. ¶ 4, ECF No. 25-1. About three years later, Uber sent Johnson an autodialed text message stating: "You're invited to drive Uber. No schedule. No boss. Sign up now and get a $500 bonus. sign up link >> http://tinyurl.com/tammyuber". *Id.* ¶ 26. This text message prompted the instant law suit.

### Legal Standard

The Federal Arbitration Act mandates that courts enforce valid, written arbitration agreements. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002) (citing 9 U.S.C. § 2). This mandate reflects a federal policy that favors arbitration and places arbitration agreements on

equal footing with all other contracts. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).

"As the Supreme Court repeatedly has emphasized, arbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016). It is "well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S. Ct. 2847, 2855–56 (2010); *see Mohammed v. Uber*, 16-cv-2537, 2017 WL 590289 (N.D. Ill. Feb. 14, 2017) (discussing development of this doctrine).

Whether an agreement to arbitrate has been formed is governed by state law. *Sgouros*, 817 F.3d at 1034. In their memoranda, the parties cite cases applying both Illinois and California contract law. Plaintiff does not suggest that there is a substantial difference between the two states' laws, and Uber affirmatively states that there is no outcome-determinative difference. Where the parties do not contend there is a difference between two states' laws, a court need not perform a choice-of-law analysis. *See Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1271 n.3 (7th Cir. 1996). Rather, the court applies the law of the forum state. *Nationwide Advantage Mortg. Co. v. GSF Mortg. Corp.*, 827 F.3d 577, 580 (7th Cir. 2016).

Illinois law requires that a consumer be provided reasonable notice of all the terms and conditions of an agreement as well as reasonable notice that, by clicking a button, the consumer is assenting to the agreement. *See Sgouros*, 817 F.3d at 1034–36 (applying Illinois law); *see also Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 865, (Cal. Ct. App. 2016) (quoting *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 35 (2d Cir. 2002) (applying California law)) ("'Reasonably conspicuous notice of the existence of contract terms and unambiguous manifestation of assent to those terms by consumers are essential if electronic bargaining is to have integrity and credibility.'"). "This is a fact intensive inquiry: we cannot presume that a

2

person who clicks on a box that appears on a computer screen has notice of all contents not only of that page but of other content that requires further action (scrolling, following a link, etc.).” *Sgouros*, 817 F.3d at 1034–35; *see also Long*, 245 Cal. App. 4th at 865–67.  As part of this inquiry, the court considers whether a reasonable person would be misled, confused, misdirected, or distracted by the manner in which the terms and conditions are presented.  *See, e.g., Sgouros*, 817 F.3d at 1035–36.

Motions to compel arbitration are analyzed under a quasi-summary judgment standard. *Tinder*, 305 F.3d at 735.  Movants initially bear the burden of providing "sufficient evidence in support of their claims such that a reasonable jury could return a verdict for them under applicable law."  *WFC Commodities Corp. v. Linnco Futures Grp., Inc.*, No. 98 C 1354, 1998 WL 834374, at *2 (N.D. Ill. Nov. 25, 1998) (quotation omitted).  Nonmovants then must identify a triable issue of fact as to the existence of the purported arbitration agreement.  *Tinder*, 305 F.3d at 735.

### Analysis

Uber urges the Court to conclude that Uber and Plaintiff have an agreement to arbitrate. In support, Uber leans heavily on Vincent Mi, a Senior Software Engineer at Uber.  Mi generally outlines the process of registering for an Uber rider account via a phone with the Android operating system.  Def.'s Ex. B, Li Decl. ¶ 5, ECF No. 16-2.  Specifically, Mi describes, on a step-by-step basis, what a person sees on his or her phone screen using Uber's current version of its application.  Mi, however, neither describes the process as it existed on June 8, 2013 (the day Plaintiff downloaded the Uber rider application), nor represents that the process is the same now as it was then.  Moreover, it would be unreasonable to infer that the process is the same as it was in 2013 because, in a court document filed in a different case, Mi has described the registration process in 2014, which appears to be substantially different than the current process.  *See* Pl.'s

3

Ex. B, ECF No. 25-2. In that court document (of which the Court properly takes judicial notice on a motion to dismiss, *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994)), Mi describes the rider registration process as requiring a person to click a "next" button and to enter payment information, steps that are not mentioned in his description of the current process. *Id.* For these reasons, the Court cannot rely on Mi's representations in order to compel arbitration at this stage.

What is clear is that a court's determination as to whether there has been reasonable notice of the terms, as well as unambiguous assent to those terms, is a fact-intensive inquiry. Despite this, Uber has failed to support its motion with the facts necessary to make that determination. As a result, the Court is left to guess whether, in 2013, Plaintiff was meaningfully informed of the arbitration agreement and whether Uber reasonably communicated to Plaintiff that, by clicking on the registration button, he assented to the arbitration agreement.

What is more, given that there has been zero discovery to date, the information that is lacking is completely within Uber's control. Uber, as the movant, was required to present to the Court facts such that a reasonable jury could return a verdict in its favor. This it has failed to do. Accordingly, the Court denies Uber's motion to compel arbitration without prejudice.

That said, the parties have not engaged in any discovery in this case. Accordingly, the Court orders the parties to engage in expedited discovery limited to the issue of formation of the arbitration agreement. At the conclusion of the discovery, the Court will hear from the parties as to whether a motion for summary judgment is appropriate on this issue, or whether we should proceed directly to trial. The parties shall file a joint proposed discovery schedule by March 24, 2017, and shall appear at a status hearing on March 30, 2017.

Date: 3/13/17 /s/ John Z. Lee